UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────────

REGINALD CHEATHAM,

                Plaintiff,

v.                                                    1:17-CV-0782
                                                      (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

─────────────────────────────────────────

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC                   AMY CHAMBERS, ESQ.
  Counsel for Plaintiff                           KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                           ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

On June 11, 2018, the parties consented, in accordance with a Standing Order to

proceed before the undersigned.  (Dkt. No. 13.)  The court has jurisdiction over this

matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the

parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is

denied and the Commissioner's motion is granted.

## I.    RELEVANT BACKGROUND

## A.    Factual Background

Plaintiff was born in 1969.  (T. 57.)  He completed his GED.  (T. 185.)  Generally, Plaintiff's alleged disability consists of depression, bi-polar disorder, and schizophrenia. (T. 184.)  His alleged disability onset date is June 1, 2012.  (T. 57.)  He previously worked as a telephone solicitor.  (T. 185.)

## B.    Procedural History

On March 18, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 57.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 21, 2016 and July 12, 2016, Plaintiff appeared before the ALJ, Eric L. Glazer.  (T. 41-56, 734-790.)  On August 11, 2016, ALJ Glazer issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-30.)  On June 12, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

## C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.  (T. 12-24.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 18, 2013.  (T. 12.)  Second, the ALJ found Plaintiff had the severe impairments of major depressive disorder, schizoaffective disorder, anxiety disorder, antisocial personality disorder, psychotic disorder, cocaine dependence and marijuana dependence.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments

located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 13.) Fourth, the ALJ found, based on all his impairments including the substance use disorders, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] can occasionally respond appropriately to supervisors, coworkers and the public; can deal with changes in a work setting provided these require only simple work-related decisions; will have a 15-20% reduction in task efficiency as an accommodation for inattention or distraction caused by intermittent symptoms adversely impacting concentration, persistence and pace; and will be absent from work once per month, at two-hour intervals each, for prearranged behavioral health treatment appointments, including vicinity travel to and from the worksite.

(T. 14.) Fifth, the ALJ determined Plaintiff was incapable of performing his past relevant work and there were no jobs that existed in significant numbers in the national economy Plaintiff could perform. (T.19-20.)

Sixth, the ALJ found, if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments. (T. 20.) Seventh, the ALJ determined, if Plaintiff stopped substance use, his limitations would not meet or medically equal the criteria of a listing. (T. 21.) Eighth, the ALJ found, if Plaintiff stopped his substance use, he would have the RFC to perform a full range of work at all exertional levels with non-exertional limitations. (T. 21.) The ALJ determined Plaintiff:

> can hear and understand only simple oral instructions; [his] ability to understand, remember and carry out instructions is limited to performing simple, routine tasks; the use of judgment is limited to simple work-related decisions; contact with supervisors, coworkers and the public is limited to brief and superficial interactions, but such interactions are adequate for accomplishment of assigned tasks; can deal with changes in a work setting provided these require only simple work-related decisions; time off-task can

be accommodated by normal breaks; will be absent once per month, at two hour intervals each, for prearranged behavioral health treatment appointments, including vicinity travel to and from the worksite; and cannot be involved in the handling, sale or preparation of controlled narcotic substances or alcoholic beverages.

(T. 21.)  Ninth, the ALJ determined absent consideration of his substance dependence disorder, Plaintiff was unable to perform his past relevant work; however, there were a significant number of jobs in the national economy Plaintiff could perform.  (T. 23.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly address and analyze Plaintiff' mental disorders and failed to properly account for disorders in the RFC and VE hypotheticals.  (Dkt. No. 10 at 17-21.)  Second, Plaintiff argues the ALJ's RFC findings were unsupported by substantial evidence and the ALJ failed to properly address and evaluate opinion evidence.  (*Id*. at 22-26.)  Third, and lastly, Plaintiff argues the ALJ failed to develop the record.  (*Id*. at 26-30.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ reasonably found that if Plaintiff stopped his substance abuse he would not have a disabling mental impairment.  (Dkt. No. 11 at 14-25.)  Second, and lastly, Defendant argues the ALJ did not fail to develop the record.  (*Id*. at 25-29.)

### C.     Plaintiff's Reply

Plaintiff filed a reply in which he reiterated his original arguments.  (Dkt. No. 12.)

## III.    RELEVANT LEGAL STANDARD

**A. Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.      ANALYSIS**

As an initial matter, this case involved drug addiction and alcoholism ("DAA") that the ALJ determined was material to Plaintiff's case. 20 C.F.R. § 416.935(b)(1); *see also*

SSR 13-2p, Titles II And XVI: Evaluating Cases Involving Drug Addiction And Alcoholism (DAA), 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013) [1]. In such cases, even though a plaintiff initially meets the traditional definition of "disabled" (inability to engage in substantial gainful activity), the ALJ must conduct a secondary analysis to determine whether plaintiff's DAA is material to an initial finding of disability.

A "key factor" in such secondary analysis is whether the plaintiff would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 416.935(b)(2). The ALJ first determines whether physical and mental limitations would remain in the absence of substance abuse. *Id*. If so, the ALJ then decides whether those remaining limitations are disabling on their own. *Id*. If so, the plaintiff is considered disabled within the meaning of the Act notwithstanding his drug addiction or alcoholism. *Id*. § 416.935(b)(2)(ii). If not, alcohol or substance abuse is considered material, and the plaintiff is not eligible for benefits. *Id*. § 416.935(b)(2)(i).

For ease of analysis, Plaintiff's arguments will be addressed out of order and in a consolidated manner. Plaintiff essentially challenges the ALJ's finding regarding the materiality of his substance abuse. Plaintiff asserts the ALJ failed to account for all of Plaintiff's mental disorders at all steps of the sequential process. (Dkt. No. 10 at 16-21.) Plaintiff asserts the ALJ improperly relied on the consultative examiner's findings regarding Plaintiff's limitations, because the doctor's report did not include every one of

---

[1]      In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), to provide that *"[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled."* Pub.L. No. 104–121 § 105(a)(1), 110 Stat. 847 (codified at 42 U.S.C. § 423(d)(2)(C)). This amendment, sometimes referred to in interpretive jurisprudence as the "DAA (drug addiction or alcoholism) Amendment" *alters* the traditional definition of disability. *Cage v. Commissioner of Soc. Sec.,* 692 F.3d 118, 123-124 (2d Cir. 2012), *cert. denied,* - U.S. –, 133 S.Ct. 2881 (2013).

Plaintiff's diagnoses that appear in the record. (*Id*. at 21.) Plaintiff asserts the ALJ's

RFC finding was unsupported by medical evidence. (*Id*. 22-26.) Plaintiff contends the

ALJ erred in affording significant weight to the opinions of non-examining medical expert

Richard Gross, Ph.D., and non-examining State agency medical examiner Dr. Tzeto

because they were inconsistent with the treatment records of Marcelle Mostert, M.D.

and Jeffery Kashin, M.D. (*Id*. at 23-25.) Plaintiff asserts Dr. Mostert attributed Plaintiff's

inability to work to Plaintiff's anxiety and panic attacks, and Dr. Kashin found Plaintiff

had coexisting schizophrenia and cannabis use which caused "limitations." (*Id*. at 23.)

Plaintiff contends evidence from Dr. Mostert and Dr. Kashin indicated Plaintiff had

serious co-existing medical disorders that could not be separated and therefore it was

unclear how the ALJ determined Plaintiff had periods of sobriety when his impairment

improved. (*Id*. at 29-30.) Lastly, Plaintiff contends the ALJ failed to fully develop the

record. (*Id*. at 26-28.)

### A.    Materiality and the ALJ's RFC Determination

Here, the ALJ's materiality determination was proper and supported by

substantial evidence in the record. An ALJ may rely on periods of sobriety to support

his finding of materiality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir.

2012). As in *Cage*, the case at hand did not contain evidence of extensive periods of

sobriety; however, the record did include inpatient hospital admissions where Plaintiff

did not have access to drugs, as well as mental status examinations performed while

Plaintiff was allegedly sober. *Cage*, 692 F.3d at 127 ("While the record does not reveal

any extended periods of sobriety during the relevant period following Cage's May 2004

application date, it does include, *inter alia,* positive evaluations of Cage conducted

during inpatient admissions when Cage did not have access to drugs or alcohol."). In addition, "the claimant bears the burden of proving that her [substance abuse] is not material to the determination that she is disabled." *Id.* at 123. Of note, Plaintiff did not receive mental health care from a primary provider, nor did Plaintiff receive general health care from a primary provider. Plaintiff received care from various hospitals and emergency treatment centers.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c).

The ALJ summarized Plaintiff's long history of inpatient and outpatient mental health treatment including numerous hospital admissions to Buffalo General Hospital ("BGH"). (T. 15.) In May of 2013, Plaintiff was admitted to BGH for three days due to complaints of depression and "vague" complaints of paranoia. (T. 269.) Dr. Kashin noted Plaintiff's positive response to therapeutic medication and psychotherapy. (T. 270.) At the time of discharge Plaintiff was described as "bright and social" and denied hallucinations, delusions, depression, and side effects. (*Id*.) Plaintiff presented to BGH again on June 22, 2013. (T. 442.) He reported suicidal thoughts and attempt. (*Id*.) He admitted drinking alcohol, and using "much" marijuana and crack cocaine in the

---

[2] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier Regulations and SSRs.

previous two days. (T. 442, 453.) A mental status exam at that time revealed Plaintiff's memory was intact, he was able to focus, he was cooperative, his thought content was coherent, he had auditory hallucinations, he had no delusions, and his thought processes were intact. (T. 454.) Plaintiff was evaluated and discharged home. (T. 445.)

On July 28, 2013, Plaintiff was admitted to the Erie County Medical Center ("ECMC") and remained until August 20, 2013. (T. 302-331, 336-346.) Psychiatrist notations stated Plaintiff had been using cocaine, marijuana, and alcohol and was feeling paranoid, hearing voices, and suicidal. (T. 305.) Michael Guppenberger, M.D. stated Plaintiff "may have secondary gain or may be decompensated." (*Id*.) A mental status examination performed on July 30, 2013, noted Plaintiff was uncooperative and refused to speak. (T. 321.) A mental status examine performed on July 31, 2013, noted Plaintiff was more cooperative and pleasant. (T. 325.) Providers noted Plaintiff appeared stressed about not being able to sleep and possibly missing an appointment with "disability." (T. 325.) On August 1, 2013, Sara Gibbons, M.D., noted that although Plaintiff endorsed auditory hallucinations, he displayed no other symptoms of psychosis and was "very organized" in thought and behavior. (T. 327.) Dr. Gibbons noted "there may be secondary gains involved in his current presentation to hospital." (*Id*.) At discharge, providers noted Plaintiff was secluded and withdrawn initially, but gradually started showing improvement and was more social, interactive, and his mood and affect showed improvement. (T. 337.) Plaintiff reported his symptoms were better and he no longer felt he needed inpatient care. (*Id*.) Providers noted at discharge Plaintiff did not display any signs or symptoms consistent with schizoaffective disorder and noted

secondary gains were a factor in his presentation.  (T. 337-338.)  Plaintiff was described as calm and cooperative with "significant improvement," his thoughts were organized and goal directed, and his affect was "greatly improved."  (T. 339.)

In May of 2014, Plaintiff presented to BGH for care.  (T. 554.)  Adelia Sazonov, M.D., noted "several discrepancies" in the information provided by Plaintiff and observed he became "irritable" and "agitated" when confronted.  (*Id*.)  Dr. Sazonov noted "we suspect possible secondary gain."  (*Id*.)  Treatment notations indicated that although Plaintiff reported a history of schizophrenia, most recent hospitalization did not follow through with that diagnosis and instead diagnosed adjustment disorder and polysubstance abuse.  (T. 557.)  Notations further indicated "despite talking of having hallucinations, during interview and in the milieu he has not appeared disorganized or internally pre-occupied."  (*Id*.)  Dr. Sazanov noted "[Plaintiff] is largely working to get his needs met here on the floor" and "there is a strong suspicion of secondary gain to his presentation and [Plaintiff] cut the interview short due to frustration with not being able to be admitted immediately."  (*Id*.)

Plaintiff was also hospitalized at Niagara Falls Memorial Medical Center ("NFMMC") on four occasions in 2015.  (T. 596-634.)  In January of 2015, Plaintiff presented to NFMMC following an arrest in which he made suicidal statements to police.  (T. 596.)  On examination, Plaintiff was "not very pleasant, not very cooperative."  (T. 599.)  Plaintiff reported hearing voices and seeing flashes.  (*Id*.)  Plaintiff was admitted and started on medication and therapy.  (T. 602.)  After approximately five days of treatment, Plaintiff had a "significant decrease" in hallucinations and his affect was brighter.  (*Id*.)

Plaintiff presented again to NFMMC on March 19, 2015 with complaints of depression and hearing voices, and Plaintiff requested to be admitted. (T. 603.) Notations reported substance abuse of cocaine, heroin, inhalants/glues/solvents, and prescription medications. (T. 604.) Plaintiff reported recent use of cocaine, THC, and opiates. (T. 608.) Providers described Plaintiff as "highly noncompliant" with "at least" ten to 20 admissions at NFMMC and BGH. (T. 608.) A mental status exam performed at the time described Plaintiff as pleasant, cooperative, and tense. (*Id*.) Providers observed Plaintiff was very worried about his legal problems and wanted to go to inpatient rehabilitations. (*Id*.) Rajandrar Kalaiselvi, M.D., noted Plaintiff was very irritable and demanded to be admitted. (T. 611.) Dr. Kalaiselvi noted once Plaintiff was referred to inpatient rehab he became cooperative. (*Id*.) The doctor stated, although Plaintiff reported hearing voices "he seems to be highly manipulative, very calculated." (*Id*.) The doctor noted Plaintiff "is afraid he has to go to court and he will be sentenced; probably, he came to the hospital wanting to go to inpatient rehab." (*Id*.) Plaintiff was denied inpatient services because of his pending legal matter. (*Id*.) Once he was denied services, Plaintiff "demanded" he be discharged. (*Id*.) Dr. Kalaiselvi noted Plaintiff's "personality problem" and "drug problem" were "very predominant." (T. 612.) The doctor noted Plaintiff was not hearing voices prior to discharge. (*Id*.)

Plaintiff presented again to NFMMC on April 28, 2015. (T. 616.) Notations indicated daily use of cocaine and marijuana. (T. 617.) Plaintiff reported hearing voices. (T. 619.) Dr. Kalaiselvi reported Plaintiff "got into another legal problem yesterday." (*Id*.) Dr. Kalaiselvi noted Plaintiff was "highly manipulative," had a depressed affect, depressed mood, was irritable, could "act out," and had an "underlying

severe personality problem." (*Id.*)  A mental status examination revealed Plaintiff was not very pleasant, not very cooperative, depressed, and irritable.  (T. 620.)  Dr. Kalaiselvi noted "[t]hey all learn to say what they have to say to get admitted and to get placement . . . [t]his is highly manipulative behavior." (*Id.*)  Dr. Kalaiselvi noted Plaintiff's speech was clear and coherent, no loose associations were noted, his memory was intact, and his insight and judgment were poor.  (*Id.*)  Discharge summary dated May 4, 2015, noted during hospitalization Plaintiff received medication and therapy.  (T. 625.)  It appears from the discharge notations, Plaintiff sought admission to other facilities.  (*Id.*)  Dr. Kalaiselvi noted Plaintiff was "very aware of what is available outside in the system . . . [he] is very aware of what is going on in the system . . . [he] knows where to get help, but he's not motivated." (*Id.*)  The doctor stated "[w]henever he has legal charges, he is here." (*Id.*)

Plaintiff reported to the hospital again in September of 2015.  (T. 627.) Notations indicated Plaintiff had an appearance ticket for a court proceeding.  (T. 631.) On examination Plaintiff was alert and oriented, made fair eye contact, was "generally cooperative," and was "somewhat guarded and withdrawn."  (T. 632.)  Plaintiff was started back on medication.  (T. 634.)  At discharge, approximately six days later, Plaintiff was described as "more animated" and "much more stable." (*Id.*)

The record contained sufficient objective evidence of Plaintiff's mental functional ability while sober; therefore, there was sufficient evidence in the record to support the ALJ's determination that Plaintiff's DAA was material.  In addition, multiple notations indicated Plaintiff presented for secondary gain, therefore, the record supported the ALJ's determination that Plaintiff may not have been authentic about his symptoms.  (T.

17.)  The ALJ afforded "great weight" to the opinions of Drs. Sazonov and Guppenberg who both noted Plaintiff's motivation of secondary gain.  (*Id*.)  Further, the ALJ relied on testimony provided by Dr. Gross to support his materiality determination, and ultimate RFC determination.

Dr. Gross reviewed Plaintiff's complete medical record and testified at the July 2016 hearing.  The Commissioner has clear discretion to solicit the opinion of a non-treating physician.  *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018).  Non-examining medical consultants, like Dr. Gross, may provide opinions which constitute substantial evidence.  *See Baszto v. Astrue,* 700 F.Supp.2d 242, 249 (N.D.N.Y. 2010) ("An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); *Byrne v. Berryhill*, 284 F. Supp. 3d 250, 260 (E.D.N.Y. 2018) ("Non-examining medical consultants, such as Dr. Fuchs, may provide opinions, which constitute substantial evidence."); *see Leach v. Barnhart*, No. 02-cv-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the Commissioner's Regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record").

Dr. Gross opined Plaintiff's substance abuse "significantly affected [Plaintiff's] ability to enter the workforce."  (T. 762.)  As outlined by the ALJ, Dr. Gross testified

Plaintiff's schizoaffective disorder and psychotic disorder symptoms were "largely substance induced" based on evidence in the record that Plaintiff improved rapidly when hospitalized and abstinent.  (T. 22, 747, 661.)  Dr. Gross testified Plaintiff had no restrictions in his ability to understand, remember, and carry out simple instructions.  (T. 758-759.)  He testified Plaintiff would not have any problems making simple work related decisions.  (T. 759.)  When asked if Plaintiff could frequently understand and remember complex instructions, Dr. Gross answered "yes."  (T. 760.)  Dr. Gross testified Plaintiff could frequently make judgment on complex work-related decisions. (T. 760-761.)  Dr. Gross indicated Plaintiff would be able to interact appropriately with supervisors, coworkers and the public and respond to changes in a routine work setting. (T. 761-762.)

The ALJ afforded Dr. Gross's opinion "great weight."  (T. 22.)  The ALJ reasoned the doctor's opinion was based on a review of the entire record, consistent with the evidence in the record, well-supported by rationale, and the doctor is an expert.  (*Id.*)

Plaintiff asserts the ALJ erred in relying on Dr. Gross's opinion because his findings were contradicted by the "longitudinal record," specifically treatment notations provided by Dr. Mostert and Dr. Kashin.  (Dkt. No. 10 at 23-224.)  Contrary to Plaintiff's assertions, the ALJ properly assessed Drs. Mostert and Kashin's treatment notations and assessments.

Plaintiff sought treatment from Spectrum Health Services, where Dr. Mostert practiced, in late 2015 and early 2016.  In December 2015, Dr. Mostert stated Plaintiff's anxiety and panic "have been mostly responsible for [Plaintiff's] inability to work."  (T. 680.)  Plaintiff asserts this statement contradicts Dr. Gross's opinion, and the ALJ's

determination, that Plaintiff's DAA was material to his disability. However, at the time of her 2015 examination and statement, Dr. Mostert was most likely unaware of Plaintiff's substance abuse. In December of 2015, Plaintiff told Dr. Mostert he used drugs in his teens, but "prefers not to use drugs" because he worried what substances and medications do to his body. (T. 679.) Subsequently, in January 2016, Plaintiff tested positive for cocaine and cannabis, reported battling drug addiction "all his life," and described the experience of being high on cocaine with "evident pleasure, focusing on how energetic he feels." (T. 681.) On exam Dr. Mostert observed Plaintiff was cooperative and articulate. (T. 682.) Plaintiff was further observed to be restless, to have a normal thought process, and his insight and judgment were "limited." (*Id*.) Dr. Mostert noted Plaintiff did not show agitation during the nursing evaluation and manipulation was a "distinct possibility." (T. 682.) A notation dated February 2018 indicated Plaintiff failed to return for treatment, therefore his assessment was not completed and his case was closed. (T. 683.) Although the ALJ did not mention Dr. Mostert by name, the ALJ properly reviewed Plaintiff's short treatment with Spectrum Human Services. (T. 17.) The ALJ correctly noted Plaintiff failed to report his drug use and reported his symptoms were well managed when he was on medication. (T. 17, 637.) Therefore, the ALJ did not err in his assessment of treatment notations completed by Dr. Mostert because the ALJ properly reviewed the notations in the context of Plaintiff's overall treatment at Spectrum.

In formulating his RFC, the ALJ also considered the November 2015 statement completed by Dr. Kashin and afforded the statement "little weight" because he found it uninformative. (T. 18, 732.) Dr. Kashin completed a form for New York State Office of

Temporary and Disability Assistance.  (T. 732-733.)  As an initial matter, Dr. Kashin listed schizophrenia and cannabis use disorder as Plaintiff's medical conditions and indicated the conditions were expected to last 7-11 months.  (T. 732.)  Therefore, Dr. Kashin's opinion indicated Plaintiff's impairments did not meet the durational requirement of the Act, that the disability last for at least one year.  42 U.S.C. 423(d)(1)(A);  *Walton v. Barnhart*, 535 U.S. 212, 225 (2002) (agency's interpretation of statute, as requiring the inability to engage in substantial gainful activity to meet a 12-monht duration requirement, is entitled to deference).

Further, Dr. Kashin did not provide any functional limitations associated with Plaintiff's mental health impairments.  Although Dr. Kashin indicated Plaintiff "has [mental health] symptoms/limitations," he declined to complete the section of the form asking for specific functional limitations.  (T. 723-733.)  Instead of completing the section of the form, Dr. Kashin drew a line through the section.  (T. 733.)  Therefore, the ALJ properly afforded Dr. Kashin's opinion little weight because the form completed by Dr. Kashin failed to provide any specific work related functional limitations.

The ALJ also took into consideration Dr. Fabiano's consultative report and opinion in formulating his RFC, and at steps two and three.  (T. 12-16, 360-362.)  Plaintiff reported to Dr. Fabiano he had no history of hospitalizations for medical reasons and denied any drug or alcohol abuse of dependency presently or in the past.  (T. 359-360.)  On examination, Plaintiff was cooperative; his eye contact was appropriate; his thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia; his attention and concentration were intact; and his memory was mildly impaired.  (T. 361-362.)  Dr. Fabiano opined Plaintiff did not

appear to have any limitations in his ability to: follow and understand simple direction and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks; perform complex tasks independently; or make appropriate decisions. (T. 362.) Dr. Fabiano opined Plaintiff appeared to have some mild limitations in his ability to maintain attention and concentration, relate adequately with others, and appropriately deal with stress. (*Id*.) Dr. Fabiano listed Plaintiff's diagnoses as major depressive disorder, moderate; anxiety disorder; and psychotic disorder. (T. 363.)

The ALJ properly afforded Dr. Fabiano's opinion "minimal weight" because it was based on the doctor's diagnoses of psychiatric disorders; however, due to Plaintiff's lack of reporting, did not take into consideration Plaintiff's substance abuse history. (T. 16.)

Plaintiff asserts the ALJ improperly relied on Dr. Fabiano's opinion in his step two and three analysis because the opinion did not take into account all of Plaintiff's diagnosed mental impairments. (Dkt. No. 10 at 19-20.) Plaintiff then asserts Dr. Fabiano's opinions were inconsistent with the longitudinal record which contained evidence and findings that Plaintiff had stressors that included severe persistent mental health illness, antisocial personality disorder, low global assessment of functioning ("GAF") scores, and other treatment records. (*Id*.)

Plaintiff argument fails because the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) ("[M]ere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability [.]") (citing *Rivers v.*

*Astrue,* 280 F. App'x. 20, 22 (2d Cir. 2008)).  Although the ALJ may not have found every diagnosed mental impairment to be severe, and Dr. Fabiano may not have based his opinion on every diagnosis listed in the record, diagnosis alone does not render an impairment severe.  Therefore, although Dr. Fabiano's opinion did not take into consideration every mental impairment diagnosis Plaintiff has received, that did not render his objective observations of Plaintiff useless.

In addition, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Further, the ALJ did not err in his special technique analysis.  The regulations "require application of a 'special technique' at the second and third steps of the five-step framework" when evaluating the severity of mental impairments.  *Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Schmidt v. Astrue,* 496 F.3d 833, 844 (7th Cir.2007)).  This technique requires "the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.'  If the claimant is found

to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Id.* at 266 (citations omitted) (quoting 20 C.F.R. § 404.1520a).  It is mandatory that the ALJ's written decision "reflect application of the technique"; "the decision *'must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.' " *Id.* at 266 (quoting 20 C.F.R. § 404.1520a(e)(4)).  The four broad functional areas outlined in the special technique mirror the "paragraph B" criteria of Listing §§ 12.04: Affective Disorders, 12.06: Anxiety Related Disorders, and 12.08: Personality Disorders.  *See* POMS DI 34132.009 Mental Listings from 12/18/07 to 9/28/16.

Based on Dr. Fabiano's examination and opinion, and on Plaintiff's testimony, the ALJ determined Plaintiff had mild restriction in activities of daily living; moderate limitation in social functioning; and moderate limitations in concentration, persistence or pace.  (T. 13-14.)  Plaintiff asserts the ALJ's step three determination was improper because the ALJ relied "only" on the findings of Dr. Fabiano and the doctor's opinion was inconsistent with the longitudinal record.  (Dkt. No. 10 at 18-20.)  Plaintiff essentially argues evidence in the record supports greater limitations in the functional areas than found by the ALJ.  (*Id.*)

Here, the ALJ did not err in his step three determination or in his application of the special technique.  The ALJ outlined the factors of the technique, and paragraph "B" criteria, and provided specific findings for each factor.  The ALJ supported his

determinations with citations to the record.  Although Plaintiff cites to evidence in the record to support his assertion, he fails to show that no reasonable fact finder could have reached the ALJ's determination. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner."  *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002).  Overall, the ALJ did not err in his assessment of Dr. Fabiano's opinion at steps two through four.

In formulating his RFC, the ALJ also afforded the opinion of the State agency medical consultant, Dr. Tzetzo, "some weight."  (T. 16.)  Dr. Tzetzo reviewed the evidence in the record and concluded Plaintiff retained the mental RFC to perform simple tasks, to adequately handle ordinary levels of supervision, and to handle brief and superficial contact with coworkers and the public.  (T. 64.)  The ALJ afforded Dr. Tzetzo's opinion some weight, reasoning it was consistent with other evidence in the record that Plaintiff had the ability to function if he abstained from substance abuse.  (T. 16.)  However, the ALJ stated the evidence in the record supported greater functional limitations when consideration was given to Plaintiff's substance abuse.  (*Id.*)

Lastly, in formulating his RFC, the ALJ relied on Plaintiff's activities of daily living. (T. 13.)  Plaintiff reported he could perform personal hygiene care, prepare meals, clean, travel, use public transportation, and shop.  (T. 200-203.)  Plaintiff reported he played chess, played basketball, and watched movies.  (T. 203.)  Plaintiff's activities of daily living further supported the ALJ's determination Plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with others.

Plaintiff also asserts that in making his RFC determination the ALJ failed to properly assess Plaintiff's credibility. (Dkt. No. 10 at 21.) Here, the ALJ's credibility determination was proper and supported by substantial evidence. The ALJ determined Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms, independent of his substance abuse, were not consistent with the medical evidence. (T. 22), *see* 20 C.F.R. § 416.929 (the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments could reasonably be expected to produce the pain or other symptoms alleged and if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work).

Plaintiff argues the ALJ failed to consider "other relevant symptoms, psychiatric reasons for non-compliance, manipulative behavior or drug use, and reports from others." (Dkt. No. 10 at 21.) Plaintiff fails to provide any evidence in the record to support his assertion. A review of the ALJ's decision and the record, as outline herein, supports the conclusion that the ALJ properly assessed Plaintiff's credibility. The ALJ thoroughly outlined the objective medical evidence in the record. The ALJ also noted the type of treatment Plaintiff received for his mental health impairments, including notations of concern that Plaintiff was manipulative and not truthful about the degree of his symptoms. The ALJ also took into consideration Plaintiff's activities of daily living. Therefore, Plaintiff's assertion that the ALJ failed to properly assess Plaintiff's credibility is without merit.

Overall, the ALJ did not err in his assessment of the medical opinion evidence in the record. The ALJ properly relied on periods of sobriety in making his determination Plaintiff's DAA was material to his disability. The ALJ relied primarily on the medical opinion provided by Dr. Gross as well as treatment notations provided by Drs. Sazonov and Guppenberger. The ALJ also relied on, although to a lesser extent, on the medical opinions provided by Dr. Tzetzo, Dr. Kashin, and Dr. Fabiano.

**B.     Develop the Record**

Plaintiff asserts the ALJ failed to develop the record because there was no medical physical functional assessment in the record and the ALJ failed to obtain Plaintiff's medical records from periods of incarceration. (Dkt. No. 10 at 26-30.)

To be sure, the ALJ has an affirmative obligation to obtain more information if there are evidentiary deficiencies in the record; however, the ALJ is under no such duty where there are no obvious gaps in the record and where, as here, the available evidence in adequate to make a disability determination. *See Cichocki v. Astrue*, 534 F. App'x 71, 77 (2d Cir. 2013); *Covey v. Colvin*, No. 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) ("Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the plaintiff's residual functional capacity.") (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)).

Here, the Agency attempted to obtain Plaintiff's prison medical records, but records were never released. (T. 292-294.)[3] At Plaintiff's first hearing, the ALJ asked

---

[3]     It appears records were requested from Armor Correctional Health Services. (T. 292-293.) Eight pages of records were available; however it appears none were received due to lack of payment. (T. 291.)

Plaintiff's counsel whether there were any medical records from Plaintiff's prior incarcerations and counsel responded that she would attempt to obtain the records. (T. 51-55); *see Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) ("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant of his counsel."). Plaintiff asserts prison records were necessary to the determination of DAA materiality. (Dkt. No. 10 at 28.) However, as outlined herein, the ALJ had sufficient evidence of periods of sobriety and the opinion of Dr. Gross regarding Plaintiff's mental functioning during those periods. Therefore, there was no "gap" in the record and there was sufficient evidence upon which the ALJ could make his determination.

Plaintiff's argument, that the ALJ should have sought additional information regarding his physical impairments, is without merit. First, Plaintiff has a burden of providing evidence that he has a severe physical impairment. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). Plaintiff provides evidence of "abnormalities" in laboratory tests, hypertension, and asthma; however, he fails to show that these conditions resulted in limitations in Plaintiff's ability to perofrm basic work-related physical abilities. Further, as stated by Defendant, Plaintiff did not mention any alleged physical impairments at all before his brief. (Dkt. No. 11 at 28.) Plaintiff reported he had no issues with sitting, standing, walking, or any other physical ability. (T. 204-205.) Plaintiff denied chronic or current physical medical conditions at his psychiatric consultative examination. (T. 184.) At the hearing Plaintiff did not testify about any physical impairments. (T. 43-56.) Therefore, because Plaintiff did not allege he had severe physical impairments, the ALJ reasonably determined that he did not have any.

Overall, the record before the ALJ was sufficient for the ALJ to make his determination. The ALJ was not required to obtain additional information from Plaintiff's periods of incarceration, where the records were requested, Plaintiff's counsel indicated she would attempt to obtain the records, and the record contained other sufficient evidence of Plaintiff's mental impairments during periods of sobriety. Although Plaintiff did not receive care from a primary care provider, the record contained numerous hospital treatment notations, including inpatient stays. The record also contained a consultative psychiatric examination and report. In addition, non-examining medical expert Dr. Gross reviewed all the medical evidence in the record and provided opinion testimony at Plaintiff's hearing. Lastly, Plaintiff did not allege any physical functional limitations and the record did not contain limitations in physical functioning, therefore the ALJ did not err in failing to find physical limitations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:          November 6, 2018

William B. Mitchell Carter
U.S. Magistrate Judge